IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 6:19-239 |
| | ) | 18 U.S.C. § 1349 |
| | ) | 18 U.S.C. § 981(a)(1)(C) |
| vs. | ) | 28 U.S.C. § 2461(c) |
| | ) | |
| | ) | |
| SCOTT A. KOHN | ) | |
| FUTURE INCOME PAYMENTS, LLC | ) | INDICTMENT |

RECEIVED
USDC CLERK, GREENVILLE, SC
2019 MAR 12  AM 11: 55

THE GRAND JURY CHARGES:

1. That beginning in or about April 2011 and continuing up and to the date of this Indictment, in the District of South Carolina and elsewhere, the Defendants, SCOTT A. KOHN and FUTURE INCOME PAYMENTS, LLC, did knowingly and willfully combine, conspire, confederate, agree and have a tacit understanding with each other and with others known and unknown to the Grand Jury, to devise and execute a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and during such period, in the course of executing said scheme and artifice:

a. transmitted and caused to be transmitted in interstate commerce, wire communications, including writings, signs, signals, pictures, and sounds, for the purpose of executing the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343; and

b. deposited and caused to be deposited any matter and thing whatever to be sent or delivered by the United States Postal Service and any private and commercial interstate carrier, for the purpose of executing the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1341.

## THE SCHEME AND ARTIFICE

2.     Future Income Payments, LLC ("FIP"), formerly known as Pensions, Annuities, and Settlements, LLC ("PAS"), is fully owned and controlled by SCOTT A. KOHN. PAS was formed on April 13, 2011.

3.     FIP actively recruited pension holders (described as "sellers" in FIP nomenclature) who found themselves in acute financial distress and were desperate for money. In exchange for the pensioner selling, assigning, or promising to pay monthly pension payments to FIP, the pensioner received a lump sum payment or loan. The adjusted annual percentage rate on these transactions often exceeded 100 percent.

4.     The consumer protection authorities of various states have forbidden FIP from doing business in their states based on findings that the transactions with the pensioners lacked the features of a sale, and/or were instead more accurately described as usurious loans, and/or were offered by an unlicensed entity.

5.     Many of the pension holders targeted by FIP were veterans of the United States Armed Forces. Federal law prohibits assignment of such pension payments under 18 U.S.C. § 5301.

6.     Working through a network of investment advisors and insurance agents, FIP solicited investors (described as "buyers" in FIP nomenclature) to purchase "structured cash flows" (i.e., pensioner monthly pension payments). FIP represented that its structured cash flows would provide higher rates of return than traditional fixed income products. It further represented that the investors would receive a consistent and predictable income. FIP allowed investors to use nonqualified or qualified (i.e., IRA/ROTH) funds and promised a rate of return of between 6.5

percent and 8 percent based on the term and source of pension funds.

7. In written contracts and oral presentations and in an effort to induce investors to purchase structured cash flows, FIP represented that it had established short and long-term reserve accounts to mitigate the risk of default by pension holders. In fact, these accounts were not established or funded.

8. FIP took active steps to conceal from investors the usurious nature of its transactions with pension holders to induce investors to purchase the structured cash flows.

9. As state regulators began prohibiting FIP from operating in various states and pensioners struggled under a usurious payment regime imposed on them, FIP diverted new investor funds flowing into the business to fund payments to earlier investors to keep the scheme and artifice operational. In this manner, the investment program operated by FIP was a "Ponzi scheme."

10. During the course of the conspiracy, FIP used the United States mail to solicit pension holders and caused investors to transfer millions of dollars via interstate wire communications.

11. The operation of the scheme and artifice surrounding FIP allowed SCOTT A. KOHN to live a lavish lifestyle.

12. When FIP ceased doing business in and around April 2018, investors who had been induced to purchase structured cash flows based on active concealment and misrepresentation of material information were owed approximately $300 million.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE

CONSPIRACY:

Upon conviction to violate Title 18, United States Code, Section 1349 (conspiracy to commit mail fraud and wire fraud) as charged in this Indictment, the Defendants, SCOTT A. KOHN and FUTURE INCOME PAYMENTS, LLC, shall forfeit to the United States, any property, real or personal, which constitutes or is derived from proceeds traceable to such property.

PROPERTY:

Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), the property subject to forfeiture includes, but is not limited to, the following:

Forfeiture Judgment/Proceeds:

A sum of money equal to all proceeds the Defendants obtained directly or indirectly as the result of the offenses charged in this Indictment, that is, a minimum of $297,129,921.77 and all interest and proceeds traceable thereto, and/or that such sum equals all property derived from or traceable to their violation of 18 U.S.C. § 1349.

Insurance Policies:

A.  $110,112.52 in funds from Minnesota Life Insurance Policy Number 2761338W in the name of Joseph P. Hipp and Beth M. Hipp
    Asset ID: 19-FBI-000909

B.  $249,729.66 in funds from Jefferson National Life Insurance Company The Hipp 2013 Irrevocable Trust Account # 4686431
    Asset ID: 19-FBI-001085

SUBSTITUTE ASSETS

If any of the property described above, as a result of any act or omission of the Defendant:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty.

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), [incorporating Title 21, United States Code, Section 853(p)], to seek forfeiture of any other property of the said Defendant up to the value of the above forfeitable property.

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A __True__ Bill

REDACTED
———————
FOREPERSON

_Sherri A. Lydon_
SHERRI A. LYDON   (WJW/jl)
UNITED STATES ATTORNEY